WHEELER BEERS *vs.* THE WOODRUFF AND BEACH IRON WORKS.

The defendants, manufacturers of steam boilers, made a boiler for the plaintiff of a quality of iron prescribed by him and of the shape and size which he directed, he being himself well acquainted with machinery. It was put up in the plaintiff's factory and run successfully for nine months, when it exploded while the person who attended it was absent at dinner. There was no satisfactory evidence as to the cause of the explosion. There was no special warranty of the boiler and no fraud in its construction. In an action for damages for the negligence of the defendants in the construction of the boiler, the jury having returned a verdict for the plaintiff, and it appearing that there was very slight evidence of negligence in the defendants and that the jury must have inferred it almost wholly from the mere fact of the explosion, a new trial was granted on the ground that the verdict was against the evidence.

The declaration in its original form contained a count for a false warranty of the boiler and one for fraud in the manufacture and sale of it. Held, that it could be amended by adding a count for negligence in the manufacture of it.

CASE, for a false warranty of a steam boiler made by the defendants for the plaintiff, for fraud in the manufacture and sale of it, and for negligence in its manufacture. On the trial to the jury the counts for false warranty and fraud were abandoned by the plaintiff. The counts for negligence had been added by amendment after the case came into court, against the objection of the defendants. The jury returned a verdict for the plaintiff, and the defendants moved for a new trial on the ground that the verdict was against the evidence, and filed a

motion in error on the ground of error in allowing the amendment. A statement of the evidence would occupy so much space that it is omitted ; so far as any general principles are involved they will be sufficiently understood from the opinion.

*Hawley* and *E. N. Dickerson* of New York, with whom was *McFarland*, in support of the motions.

*Loomis* and *Hollister*, contra.

HINMAN, C. J. The plaintiff was permitted to amend his original declaration by adding thereto two new counts ; and the first question is, whether this was properly allowed. The original counts are two of them on what is called a false warranty, and one for fraud in the manufacture and sale to the plaintiff of a steam boiler to be used in the plaintiff's manufactory at Bridgeport. The added counts allege that the defendants were manufacturers of steam boilers for general use, that they were employed by the plaintiff to manufacture a steam boiler for him, which they did, but that in manufacturing it they neglected their duty to make it of good materials, and in a safe and secure manner, in this, that they so carelessly and unskillfully manufactured it, that while in use by the plaintiff it exploded to his injury, &c. The counts, therefore, were all for torts or wrongs, and being all in case, it is quite obvious that the form of the original action was not changed in the added counts. Was the ground of action changed within the meaning of our statute in regard to amendments ? It appears from an inspection of these counts that the object of all of them is the recovery of damages for the tortious acts of the defendants, in manufacturing for and delivering to the plaintiff a weak, imperfect and insufficient steam boiler, which failed to answer the purpose for which it was procured by the plaintiff ; and which acts of the defendants were contrary to their duty, either in respect to their express obligations by contract, or in respect to the obligation which the law imposed upon them as manufacturers of steam boilers. It appears to us, therefore, that the amendment was

justified by the liberal construction which our modern decisions have very properly given to our statute on this subject. *Baldwin* v. *Walker*, 21 Conn., 168. *Nash* v. *Adams*, 24 id., 33. *Hoyt* v. *Smith*, 27 id., 468.

But the defendants move for a new trial on the ground that the verdict is against the evidence in the case, and notwithstanding the reluctance which we always feel to interfere with the verdicts of juries, unless they are very clearly and palpably wrong, we feel this to be a case in which our duty requires of us that it should be sent back for another trial. Looking at the case as the evidence presents it, in the most general form, we find that the defendants furnished to the plaintiff a steam boiler, the general shape and size of which, as well as the kind of material used in its manufacture, were all known to, and either specifically ordered or expressly sanctioned by the plaintiff, who was himself well acquainted with machinery of this description, having long been accustomed to its use in his manufactory; and being thus made according to a plan agreed upon, it was put up for use and run for about two months at a pressure of seventy-two pounds to the square inch, when the pressure was reduced to fifty-two pounds, at which it was run for about seven months longer, when, being left for a considerable length of time, while the young man who had been in charge of it was at his dinner, it exploded or burst, no one being present who can state the cause of the accident. Now if this is a fair view of the whole case it seems quite clear that the plaintiff is not entitled to recover. In the first place, there was no special warranty, and no fraud proved against the defendants, and the plaintiff's claim must rest entirely upon some supposed violation of the duty which the law raises against them as manufacturers of steam boilers. They were bound undoubtedly to exercise integrity and reasonable skill in the business which they pursued. But no skill could guard against extraordinary accidents, to which steam machinery is liable; and in the absence of any proof that the accident was owing to some want of skill, or to some neglect in the manufacture, or in the material, which reasonable care and skill would have

Beers *v.* Woodruff & Beach Iron Works.

guarded against and prevented, it ought rather to be attributed to some extraordinary cause than to any want of skill or any neglect in the manufacture. Is then the statement with which we commenced the discussion of this point a fair view of the substance of the whole evidence in the case? It appears to us that it is. There was evidence tending to show that the boiler head was in fact made of an inferior quality of iron. But it was shown satisfactorily that it was made of the very description of iron which the plaintiff directed that it should be, and having exercised ordinary care in procuring the very iron which they were instructed to use they certainly ought not to be responsible for any unusual defect in that portion which went into this boiler. But we think the accident was caused by an explosion which no skill in the manufacture of the boiler, and no iron ever used for that purpose, could have prevented. The evidence in favor of this supposition, irrespective of the testimony of Hurd, the witness who had charge of the engine on the day the accident happened, is very satisfactory, and we do not think there is anything in the testimony of Hurd that ought to have any considerable weight against it. Hurd had charge of the engine at the time of the explosion, and it was probably in consequence of his inexperience or of his neglect of duty that the accident happened. He was discharged from the plaintiff's employment soon after this occurrence, and although he was indebted to the plaintiff at the time, and the plaintiff says he considered it for his interest that he should leave, yet the plaintiff afterwards, as both testify, paid him, or rather made him a present of, forty or fifty dollars more. This, to say the least, is such a suspicious circumstance that we should not rely very much upon the evidence of this witness. But he says that although he pumped in water at intervals of one hour on the morning of the day of the explosion, yet there was no water put into the boiler after eleven o'clock, and he ran the engine till fifteen minutes past twelve o'clock, and then left it to get his dinner, during which time the explosion occurred.

We think, therefore, that the most probable cause of the accident was, that the water had become so low that much of

the surface against which the fire was burning was uncovered, and, thus exposed, became so heated that the foam from the small quantity of water, when it came in contact with the heated surface of the boiler, was converted into steam in such quantities, and at so rapid a rate, as to cause the explosion. If this was so, then the accident occurred from a cause which no skill in the manufacture, and no material which has ever been used for the purpose of making boilers, could have prevented. But, however this may be, the defendants show very satisfactorily that they used all the precaution usually taken in the manufacture of steam boilers, both in respect to the purchase of the material, and in working it up. We can not think that the simple fact that it exploded after it had been in successful operation for nine months, without its being shown by the plaintiff from other evidence what the cause of the explosion was, sufficient to justify a finding that it was caused by any negligence or want of skill in the defendants. Every one knows that all steam boilers are liable to explode notwithstanding the utmost care and skill in the manufacture of them. And after a period of nine months' constant use, if there is nothing but the simple fact of the explosion itself to show that there was neglect in the manufacture, we can not think this sufficient to justify a finding that there was such neglect. The presumption is altogether against such a supposition. We think, therefore, to justify this verdict, there should have been clear proof sufficient at least to overcome this presumption and raise a stronger presumption that there was negligence. We find no such evidence in this case, and we therefore are of opinion that a new trial should be granted.

In this opinion the other judges concurred; except Dutton, J., who having been counsel in the case did not sit.