WILLIAM H. CRAFT AND ANOTHER *vs.* CATHARINE N. ROLLAND.

The defendant, a married woman living with her husband upon a farm of which
the husband took the general management, having separate property of her
own, ordered provisions for the use of the family to be charged to her solely on
her separate account, the husband having nothing to do with the matter be-··
yond assenting thereto. The plaintiffs upon her order so given furnished pro-
visions from time to time to the family wholly upon her credit and charging
the same solely to her. Held that the provisions were to be regarded as pur-
chased by the wife upon her own responsibility and upon the credit of her sep-
arate estate, and that the plaintiffs had no claim against her husband therefor.

The defendant was afterwards abandoned by her husband, and while so aban-
doned she promised the plaintiffs to pay the amount due them by their account.
Held that her original obligation to pay the claim, which could have been en-
forced in equity against her separate estate, was a sufficient consideration for
this promise.

Under the statute (Gen. Statutes, tit. 13, sec. 25,) a married woman abandoned
by her husband is as to legal rights and responsibilities a feme sole. Held
that the defendant, having been abandoned by her husband when she made
the·promise, was bound by it in law as if she were a feme sole, and that an
action could be maintained against her as a feme sole.

The writ in the case as originally drawn contained, immediately following the
name of the defendant, the words " believed to be the wife of *A R* now absent
in parts to the plaintiffs unknown ;" also next following the command to sum-
mon the defendant, the words " and said *A R* if found within your precincts.'
The court below allowed the plaintiffs to amend by striking out the above
words. Held that the amendment did not change the form or ground of the
action and could properly be allowed.

Also an amendment by which the word " she" was substituted for the word "he"
in the following clause of the declaration :—"And being so indebted the de-
fendant promised the plaintiffs to pay them said sum when *he* should be thereto
requested; yet the defendant her said promise not regarding has never per
formed the same."

ASSUMPSIT for goods sold, brought to the Court of Common
Pleas of Fairfield County, and tried on the general issue with
notice, closed to the court, before *Brewster, J.*

The defense set up in the notice was, that the defendant
was, and during all the time covered by the declaration had
been, a married woman, one Augustus Rolland being her hus-
band, and that she had not transacted business of any kind
for herself since her marriage.

Before the trial of the case in the Court of Common Pleas

the plaintiffs moved to amend their writ by striking out the words, next following the name of the defendant, "believed to be the wife of Augustus Rolland, now absent from said Greenwich and in parts to the plaintiffs unknown." Also the words, next following the command to summon the said Catharine to appear before the court, "and said Augustus if found within your precincts." They also moved to amend by changing the word "he" to the word "she" in the following clause of the declaration: "And being so indebted the defendant afterwards, to wit, &c., in consideration thereof, undertook and faithfully promised the plaintiffs to pay them said sum of money when *he* should be thereto afterwards requested; yet the plaintiffs say that the defendant, her said promise not regarding, has never performed the same." It appeared that this clause of the declaration was a part of a printed blank of the ordinary form for the common counts in assumpsit. The defendant objected to all these amendments, but the court allowed them.

The articles for which the suit was brought and which were stated in the bill of particulars filed in the case, consisted of meats of different kinds furnished by the plaintiffs, who were butchers, for family use. The court upon the trial found the following facts:

The defendant, at the times when the several charges in the plaintiffs' bill of particulars were made, was, and for some time previous had been, a married woman, and the wife of one Augustus Rolland. At the time when the plaintiffs began to furnish the articles they were living together as husband and wife, in a dwelling house on a farm at Greenwich, in the county of Fairfield, which farm was bought by the defendant, and paid for with her own money, but the title was taken and remained in them jointly, and the stock, farm implements, household furniture, and other personal property on the premises, almost wholly belonged to the defendant. She also had other separate estate. The husband, while they were so living together, took the general charge and management of the farm, disposed of the products, and hired, paid, and discharged the workmen thereon, but would have nothing

Craft *v.* Rolland.

to do with the ordering or purchase of meats for the family, which matter he always left wholly in the charge of the defendant, who attended to it personally when in Greenwich. The defendant was reputed to be, and was commonly known at Greenwich as, the Countess Heinraeth. Before any of the meat was furnished, the defendant personally requested the plaintiffs to furnish meat for her household, and charge the same to her, and they accordingly charged, and continued to charge, the same to her, and not to her husband, with whom they had no intercourse relative to the matter. The defendant also at the same time wrote her name in full on the memorandum book of the plaintiffs as the Countess Heinraeth, so as to have the meat specially charged to herself and herself only. They continued to reside together in the dwelling house, in the same manner and under the same relations, until on or about the 7th day of April, 1869, when the defendant personally informed the plaintiffs that she was about to leave for England, and requested them to continue to furnish meat at her house and to her family while she was gone as before, and said that she was accustomed to have forty or fifty pounds per week, and directed them to charge the same to herself, and said she would pay for the same on her return. She immediately thereafter left the country and went to reside in the city of London, in England. The plaintiffs complied with her orders and continued to leave the amount of meat so ordered at her house. All the meat so furnished was charged to her alone, and was furnished on the faith of her order and promise, and solely on her credit. It was then understood by both the plaintiffs and the defendant that the charges so made were to bind her separately. Her husband remained on the farm, and continued to reside in the dwelling house, solely working the farm, and controlling and directing the same, and controlling and directing the household, in the same manner and to the same extent as he had previously done, until on or about the 17th day of July, 1869, when he left the premises and went to reside with the defendant in the city of London, and continued thereafter to reside with her until on or about the 14th day of November, 1869,

when he abandoned her, and has continued away from her ever since.

When the defendant left for England one Fleury and his family, consisting of two or three members besides himself, were guests at her house by her invitation, and remained there, with the defendant's servants and one of the workmen on the farm, until she returned from England, on or about the 15th day of July, 1870, and shortly thereafter left. The defendant on her return assumed the whole charge and management of the farm and family. After her return, and before the 30th day of July, 1870, the plaintiffs furnished her with a bill of all the items of meat furnished, and subsequently when they called on her on the 30th day of July, 1870, she brought out the bill and paid them $150, and promised to pay the balance in a few days thereafter, which promise she subsequently repeated. The plaintiffs applied the payment upon the bill in the order of the charges therein, so far as the same would satisfy the bill, and continued thereafter to furnish her with meat as before. She continued to reside on the premises after her return, and the meats charged to her by the plaintiffs after that time were furnished to herself and family in the same manner as before she left for England. When the defendant invited Fleury and his family to come to her house, she only invited them to stay one month. They came but a few days before she left for England, and she expected them to go away at the expiration of the month; but no notice of such expectation was ever given to the plaintiffs, who had reason to suppose they were part of her family. The defendant, while in England, both before and after her abandonment, knew of the continuance of Fleury and his family at her house, and in fact corresponded with them during that time. Fleury, after her husband went to England, assumed to act as her agent in the management of her affairs, sold and disposed of the products of the farm and stock thereon, and contracted debts in her name, which, or some of which, after her return, she paid or promised to pay, and called upon him for an account of his dealings and transactions. Some of the meat charged in the bill of particulars

was in fact delivered to Fleury, or to members of his family, while at the dwelling house, and a considerable part of it consumed by them.

Upon these facts the defendant claimed, as matter of law, that any order given by her on or before the 7th day of April, 1869, was to be taken and considered as only the order of her husband, and that the delivery of the meat to her husband and their servants at once raised an implied promise on the part of the husband to pay for the same, and that any promise which the defendant might have made could not prevent such implied promise from arising on the part of her husband to pay for the same, and especially when she was absent from the premises and her husband controlling and directing the farm and the household ; that there was no legal, moral or equitable consideration to support the promise made by her after her abandonment and return to the premises, and that her promise was wholly void, as well by reason of a want of consideration as by reason of the statute of frauds and perjuries, it being a parol promise to answer for the debt of another, and not a promise in writing ; that the portion of the account charged in the bill since the defendant's return was for necessaries furnished a married woman, and to no one else, the husband being responsible and having ample property within the reach of legal process to fully pay the same ; and that if the court should find the charges since the return of the defendant to be valid charges against her, then the $150 should be applied to further cancel the charges made after that payment.

But the court held that the application of payment was properly made by the plaintiffs, and that the new promise made by the defendant, after her abandonment, to pay the items charged to her separate estate, entitled the plaintiffs to recover for the articles furnished before her abandonment as well as after. The court therefore found the issue for the plaintiffs, and rendered judgment in their favor for the whole of the balance claimed by them to be due after deducting the payment of $150.

The defendant moved for a new trial for error in the rulings

of the court, and also filed a motion in error for error in the allowance of the amendments before stated, and on the ground that the declaration as amended contained no averment that the defendant was a married woman abandoned by her husband, but described her only as a feme sole.

*Curtis*, in support of the motion.

1. The contract of a married woman at common law is, as a general rule, absolutely void. *Smith* v. *Thompson*, 36 Conn., 107. Tyler on Infancy and Coverture, 313.

2. Such contract, if made while she is residing with her husband, and for necessaries, or goods which go to the benefit of the husband and his family and servants, is considered solely as his contract, and the wife is considered solely as his agent. Tyler on Infancy and Coverture, 343; *Plimmer* v. *Sells*, 3 Nev. & Man., 422; 1 Parsons on Cont., 345. In the present case the wife could not be considered as the agent of her husband while she was absent from him, and while afterwards his agents the Fleurys had the sole management of the affairs of the household, and the goods were delivered directly to the husband or his servants or agents.

3. The promise made after her return, and after her abandonment by her husband, was absolutely void. 1st. Because if void as to her at first, and only binding upon the husband, it became his promise and his debt, and he was alone liable. Therefore the promise made by her after her return, was a promise to answer for the debt of another, and not in writing. 2d. There was no legal or valid consideration for the original promise as her promise. The goods were furnished to the husband and his household, not to her, except as a member of the household, and by law he was bound to support her, and is to be considered as having supported her, not she as supporting him. 3d. There being no legal or equitable consideration for the first promise on her part, the second is of no more validity than the first. 3 Am. Law Reg., N. S., 45, note; *Eastwood* v. *Kenyon*, 11 Adol. & El., 438; 3 Bos. & Pul., 249, note; *Lloyd* v. *Lee*, 1 Stra., 94.

4. The payment of the $150 being a payment on the ac-

count should be applied first on that portion of the account, the items of which were delivered to the defendant after her return.

5. The amendment changed the ground of the action. It was an action in which the husband was charged to have been the contracting party, and the wife with having broken the contract. It clearly appears that the action was intended to be brought against both husband and wife, and to charge them jointly, and if so it comes under the rule in the cases of *Peck* v. *Sill*, 3 Conn., 157, and *Maritime Bank* v. *Rand*, 24 id., 9, that the name of one of two joint defendants in an action founded on contract can not be dropped and the action proceed against the other.

6. The writ as amended is fatally defective. It should have contained all the necessary averments to show that the wife could be sued as a feme sole. The wife at common law is incapable of being sued, and therefore the plaintiff should show upon what grounds suit is brought. If the wife has been abandoned by her husband, making the exceptional case provided for by the statute, it is a fact to be averred and proved in the same manner as any other fact.

*Woodward* and *Hoyt*, contra.

PARK, J. The principal ground for a new trial of this cause is based on the claim that the husband of the defendant was originally liable to pay the plaintiffs' bill. And here we think the defendant is in error. The goods were purchased by the defendant solely on her responsibility. The husband was not known in the transaction by either party. She intended to pledge her credit and her separate estate in payment, and offered them to the plaintiffs in exchange for their goods, which offer was accepted, and the property delivered by them on her credit alone, although they knew that she was a feme covert, living with her husband. It is clear that the plaintiffs have no claim against the husband for the price of the goods, and the defendant therefore cannot make defence on the ground of his liability. *Bentley* v. *Griffin*, 5 Taunt., 356;

VOL. XXXVII.—63

*Shelton* v. *Pendleton*, 18 Conn., 417; *Taylor* v. *Shelton*, 30 Conn., 122; 2 Kent Com., 146; 1 Swift's Digest, 35. In certain cases a wife may bind her husband for necessaries against his consent and express prohibition. The principle was established for the benefit of the wife, to save her from suffering, and starvation in certain cases. But it is not claimed that the case we are considering comes within that principle, and we therefore dismiss it without further comment.

In all other cases where goods are purchased by the wife, the liability of the husband depends upon agency, either express, or implied from his acts. Here the wife did not pretend to act as agent of the husband. She acted for herself alone, which destroys entirely all claim of agency in the transaction.

In the recent case of *Wells* v. *Thorman*, 37 Conn., 318, we decided, in accordance with many other decisions of this court, that a married woman may contract debts and render her separate estate liable in equity for the payment. We held in that case that her separate estate was liable on a contract made with her which was no stronger to charge her separate estate than is the present one. That case, then, is decisive of this, to the extent that the defendant originally bound her separate estate in equity to pay this claim.

If her estate was bound, then it follows that she herself was under a moral and equitable obligation to pay the claim, which was a sufficient consideration for the promise which she subsequently made to pay, after her abandonment by her husband. *Cook* v. *Bradley*, 7 Conn., 57; *Lee* v. *Muggeridge*, 5 Taunt., 36; Chitty on Contracts, 46, 47; *Wennall* v. *Adney*, 3 Bos. & Pul., 249, note. When that promise was made she was, in legal contemplation by our statute, a feme sole, and her promise became binding on her in law as well as in equity. Gen. Statutes, tit. 13, sec. 25.

This view of the case renders it unnecessary to consider the claim that has been made regarding the statute of frauds and the application of the payment that was made, for if the husband was not originally liable they have no application to the case.

Craft *v.* Rolland.

In regard to the amendment of the declaration that was allowed by the court below, it seems to us that it did not change the form or ground of the action. The ground of the action manifestly was an indebtedness due from the defendant, Catherine Rolland, to the plaintiffs. The husband was attempted to be joined for mere conformity. The allegations are all in the singular number. One of them is, "that the defendant her said several promises aforesaid not regarding, has never performed the same, &c." It is true that the allegation just preceding the one quoted uses the word "he" when speaking of the promise made to the plaintiffs to pay the indebtedness when requested. But it appears that this allegation in the original declaration was in a printed form, and the omission to insert the letter *s*, before the letters *h* and *e*, which were in print, to make the word *she*, was clearly a mere mistake, for the allegation quoted, referring to it, uses the word *her*—"*her* said several promises aforesaid not regarding &c." This word was written; thereby showing the unmistakeable intention of the draftsman to make all the allegations solely against her. It appears then that there was no allegation against the husband. The officer was merely directed to summon him to court if found within his precincts. But he was required to answer to nothing if he should be summoned. He was not found by the officer, and we think the court properly allowed the amendment. *Nash* v. *Adams*, 24 Conn., 33; *Baldwin* v. *Walker*, 21 Conn., 168; *Beers* v. *Woodruff & Beach Iron Works*, 30 Conn., 308.

The court was not called upon under the pleadings to consider the sufficiency of the declaration as amended. Advantage could be taken of that only by a demurrer, or a motion in arrest of judgment.

There is no error, and a new trial is not advised.

In this opinion the other judges concurred.